IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 MAY 11  AM 10: 46

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | | |
|---|---|---|
| POWER & TELEPHONE SUPPLY COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2217 Ml/V |
| | ) | |
| SUNTRUST BANKS, INC., SUNTRUST BANK, SUNTRUST BANK-ATLANTA, SUNTRUST BANK-NASHVILLE, N.A., SUNTRUST EQUITABLE SECURITIES CORPORATION, and SUNTRUST CAPITAL MARKETS, INC., | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
DISMISS DEFENDANTS' COUNTERCLAIM FOR INDEMNIFICATION,
and
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING
DEFENDANTS' COUNTERCLAIM FOR INDEMNIFICATION

---

Before the Court is Plaintiff's Motion to Dismiss Defendants' Counterclaim for indemnification, filed February 2, 2005, and supplemented on February 4, 2005.  Defendants responded in an opposition received on March 4, 2005.  Plaintiff filed a reply to Defendants' response on April 15, 2005.  For the following reasons, Plaintiff's Motion is GRANTED in part and DENIED in part.

Also before the Court is Defendants' Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Partial

325

Summary Judgment, filed on January 18, 2005.[1]  Plaintiff

responded in an opposition received on March 4, 2005.  A reply

was received from Defendants on March 28, 2005.  For the

following reasons, Defendants' motion is GRANTED.

## I.    BACKGROUND

This action arises out of a financial transaction between

the parties involving interest rate swap agreements.  Detailed

discussions of the facts underlying this case are contained in

the Court's December 27, 2004, Dismissal Order (Order Granting in

Part and Denying in Part Defs.' Mot. to Dismiss of Dec. 27, 2004

(Docket No. 236)) and the Court's May 10, 2005, Summary Judgment

Order (Order Granting Defs.' Mot. for Summ. J.).

The instant motions relate to indemnification provisions

contained within the various agreements between the parties.

Defendants contend that these indemnification provisions require

Plaintiff to compensate them for their reasonable costs and

attorney's fees related to defending this action.  Plaintiff

contends that Defendants are not entitled to indemnification

under the terms of the relevant agreements.

---

[1] The Court granted Defendants' motion for summary judgment
regarding the claims in Plaintiff's Third Amended Complaint in
its May 10, 2005, Order Granting Defendants' Motion for Summary
Judgment.  In that Order, the Court noted that the portion of
Defendants' motion that asserted that summary judgment was proper
regarding Defendants' Counterclaim for indemnification, along
with Plaintiff's motion to dismiss that Counterclaim, would be
decided in a separate order.

## II.   STANDARDS OF REVIEW

Plaintiff moves to dismiss Defendants' Counterclaim for indemnification "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true. Saylor v. Parker Seal Co., 975 F.2d 252, 254 (6th Cir. 1992). Furthermore, the court must construe all of the allegations in the light most favorable to the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  "A court may dismiss a [claim under Rule 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Conversely, Defendants have moved for summary judgment regarding their Counterclaim for indemnification under Federal Rule of Civil Procedure 56.  Under Rule 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or

3

whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1989).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## III. ANALYSIS

With respect to each agreement for which Defendants claim a right to indemnification, the Court will address whether Defendants' Counterclaim should be dismissed, and if not, whether Defendants are entitled to summary judgment regarding their Counterclaim. The Court will then separately address which

4

Defendant entities are entitled to enforce the respective indemnification provisions.

## A. Interpretation of Indemnification Agreements

"[C]osts and attorneys' fees are recoverable under an express indemnity contract if the language of the agreement is broad enough to cover such expenditures." Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 338 (Tenn. 1985).  Indemnification provisions are "subject to the normal canons of contract construction.  Accordingly, courts must construe these agreements as written ...." Boiler Supply Co. v. Lunn Real Estate Invs., No. 01A01-9605-CH-00246, 1998 Tenn. App. LEXIS 430 at *8 (Tenn. Ct. App. July 1, 1998)(citations omitted).

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." Planters Gin Co. v. Federal Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002)(citation omitted). "The intent of the parties is presumed to be that specifically expressed in the body of the contract." Id.  In construing a contract, a Court looks to "ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." Id. (citation omitted).

When the terms of a contract are unambiguous, "[i]t is the Court's duty to enforce contracts according to their plain

5

terms." <u>Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.</u>, 521 S.W.2d 578, 580 (Tenn. 1975) (citations omitted). Under Tennessee law, "a contract must be enforced according to the ordinary meaning of its words unless both parties understand and agree at the time of the contract that its meaning is otherwise." <u>Moore v. Moore</u>, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980) (citing <u>Hardwick v. American Can Co.</u>, 88 S.W. 797 (Tenn. 1905)).

Upon review of the record and the parties' submissions, the Court finds that the various contract terms to which Defendants point in asserting their right to indemnification are unambiguous.  Accordingly, the Court will construe them according to their terms.

### B. The Agreements' Indemnification Provisions

The Court will address each of the agreements under which Defendants claim a right to indemnification in turn.

> #### 1. The November 16, 1998, Restated Credit Agreement, the November 16, 1998, Restated Security Agreement, and the 2000 Second Amended and Restated Credit Agreement

Defendants first claim a right to indemnification pursuant to the November 16, 1998, Restated Credit Agreement, the November 16, 1998, Restated Security Agreement, and the 2000 Second Amended and Restated Credit Agreement.[2]

---

[2] The indemnification provisions in §§ 10.4(i) and 10.4(iii) of the 2000 Second Amended and Restated Credit Agreement, (Defs.' Ans. and Counterclaim, Ex. B), are identical to the

### a. Section 10.4(iii)

Defendants claim a right to indemnification under Section 10.4(iii) of the November 16, 1998, Restated Security Agreement. Section 10.4(iii) provides that the Borrower shall:

> [I]ndemnify the Agent and each Lender, and their respective officers, directors, employees, representatives and agents from, and hold each of them harmless against, any and all costs, losses, liabilities, claims, damages or expenses incurred by any of them (whether or not any of them is designated a party thereto) (an "Indemnitee") arising out of or by reason of any investigation, litigation or other proceeding related to any actual or proposed use of the proceeds of any of the Loans or any Consolidated Company entering into and performing of the Agreement, the Notes, or the other Credit Documents, including, without limitation, the reasonable fees actually incurred and disbursements of counsel incurred in connection with any such investigation, litigation or other proceeding, provided, however, Borrower shall not be obligated to indemnify, any Indemnitee for any of the foregoing arising out of such Indemnitee's gross negligence or willful misconduct ....

(Defs.' Ans. and Counterclaim, Ex. B at 76.)[3]  Plaintiff contends that the instant litigation is not related to any dispute over the "actual or proposed use of the proceeds of any of the Loans" or "any Consolidated Company entering into and performing of the Agreement, the Notes, or the other Credit Documents."  Defendants contend that the instant litigation relates to Plaintiff's

---

indemnification provisions in Sections 10.4(i) and 10.4(iii) of the November 16, 1998, Restated Credit Agreement.  Accordingly, the Court's analysis of those provisions applies identically to both Agreements.

[3]  Plaintiff concedes that the "Borrower" refers to Plaintiff. (Pl.'s Mot. to Dism. Defs.' Counterclaim at 7.)

"entering into and performing" the Swap Agreements and the Restated Security Agreement because Plaintiff's allegations in the Third Amended Complaint relate to whether Defendants improperly advised or induced Plaintiff to enter into the agreements at issue.[4]

The Court finds that the plain language of Section 10.4(iii) is broad enough to encompass Defendants' contention that they are entitled to indemnification for costs arising out of litigation related to Plaintiff's "entering into and performing of the Agreement, the Notes, or other Credit Documents." See Pullman Standard, 693 S.W.2d at 338. Although Plaintiff's suit does not seek recission of the relevant agreements, the claims in Plaintiff's Third Amended Complaint all flow from Plaintiff's allegation that Defendants improperly advised Plaintiff to enter into the various agreements for which Defendants seek indemnification under Section 10.4(iii). Accordingly, Plaintiff's motion to dismiss Defendants' Counterclaim with

---

[4] Specifically, Defendants assert that Plaintiff contends that it was fraudulently induced to enter into the Swap Agreements and that the cross-collateralization clause in the Restated Security Agreement is illegal, violates anti-tying provisions and Defendants purported fiduciary duties. Defendants also assert that Plaintiff contends that Defendants failed to explain the Swap Agreements and made inappropriate recommendations, causing Plaintiff to enter into the Commitment Letter, which in turn forced it to acquire the Swap Agreements, which became subject to the cross-collateralization provisions. (Defs.' Mem. in Opp. to Pl.'s Mot. to Dismiss Defs.' Counterclaim at 12.)

respect to Section 10.4(iii) of the November 16, 1998, Restated Credit Agreement is DENIED.[5]  Because the relevant provisions are identical, Plaintiff's motion to dismiss Defendants' Counterclaim with respect to Section 10.4(iii) of the 2000 Second Amended and Restated Credit Agreement is likewise DENIED.

The Court further finds that no genuine issues of material fact exist and that Defendants are entitled to judgment as a matter of law regarding their Counterclaim for indemnification pursuant to Section 10.4(iii) of the November 16, 1998, Restated Credit Agreement and Section 10.4(iii) of the 2000 Second Amended and Restated Credit Agreement.  As noted above, the Court has found that Plaintiff's claims in its Third Amended Complaint flow from Plaintiff's allegation that Defendants improperly advised Plaintiff to enter into the various agreements for which Defendants seek indemnification under Section 10.4(iii).  The Court has further found that such claims fall within the scope of the indemnification provision in Section 10.4(iii).  Accordingly, Defendants' motion for summary judgment is GRANTED regarding

---

[5] Although Plaintiff contends that any indemnification obligation ceased when Plaintiff satisfied its obligations under the Agreement, Section 10.10(b) of the November 16, 1998, Restated Credit Agreement, entitled "Effectiveness; Survival," provides that Plaintiff's obligations under Section 10.4 "survive the payment in full of the Notes after the Maturity Date for a period not to exceed five (5) years thereafter."  Accordingly, the plain terms of the agreement state that any obligation to indemnify Defendants exists regardless of whether Plaintiff paid in full its obligations under the Agreements.

Defendants' claim for indemnification under Section 10.4(iii) of the November 16, 1998, Restated Security Agreement and Section 10.4(iii) of the 2000 Second Amended and Restated Credit Agreement.

### b. Sections 14(l) and (j)

Defendants also claim a right to indemnification under Sections 14(l)and (j) of the November 16, 1998, Restated Security Agreement.  Section 14(l) of that agreement provides, in pertinent part:

> Costs, Expenses, and Taxes.  Borrower agrees to pay on demand all reasonable out-of-pocket costs and expenses of Agent and each of the Lenders (including the reasonable fees and out-of-pocket expenses of Agent's and Lenders' attorneys, paralegals, accountants, auditors, and consultants) incurred by Agent and/or the Lenders in connection with the preparation, execution, delivery, administration, interpretation, amendment, waiver or enforcement of this Agreement, or in the protection of Agent's and/or the Lenders' rights hereunder (including any suit for declaratory judgment or interpretation of the provisions hereof and any bankruptcy, insolvency or condemnation proceedings involving Borrower or any Collateral). ... Upon Agent's request, Borrower shall promptly reimburse Agent for all amounts reasonably expended, advanced, or incurred by Agent or any Lender in ... enforc[ing] or protect[ing] the rights of Agent and/or the Lenders under this Agreement, or to possess, monitor, prepare for sale, sell or dispose of any Collateral, including all court costs, reasonable attorney's and paralegal's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Agent and/or any Lender in connection with any such matters, and all such amounts shall bear interest [at] the maximum rate then payable with respect to the Indebtedness (but not in excess of this maximum rate permitted by applicable law) until paid in full.  All obligations under this Section shall be part of the

> Indebtedness and shall survive any termination of this Agreement.

(Defs.' Ans. and Counterclaim, Ex. B at 16-17.)   Section 14(j) of the 1998 Restated Security Agreement provides:

> No Fiduciary Relationship.  Nothing contained herein or in any related document shall be deemed to create any partnership, joint venture or other fiduciary relationship between Agent and Borrower and/or any Lender and Borrower for any purpose.

(Defs.' Ans. and Counterclaim, Ex. B at 16.)  Plaintiff contends that it has performed its obligations under the relevant agreements and that Defendants have not moved to enforce any rights under the agreements.[6]  Defendants contend that they now seek interpretation and enforcement of the provisions of the Restated Security Agreement, including Section 14(j).

The Court has found that no fiduciary relationship existed between the parties.  However, the Court finds that the plain language of Section 14(j) does not foreclose Plaintiff from contending that the parties' conduct created a fiduciary relationship.  Accordingly, Defendants are not entitled to indemnification under Section 14(j).

---

[6] Plaintiff also contends that section 4(d) of the Restated Security Agreement forecloses indemnification, because that provision terminates the indemnification requirement at the time the indebtedness has been paid in full.  However the plain language of Section 4 creates an indemnification obligation that is independent of, and does not modify, Plaintiff's obligation in Section Section 14(l).

11

However, the Court finds that the plain language of Section 14(1) requires Plaintiff to pay on demand all "reasonable out-of-pocket costs and expenses of Agent and each of the Lenders (including the reasonable fees and out-of-pocket expenses of Agent's and Lenders' <u>attorneys</u>, paralegals, accountants, auditors, and consultants) incurred by Agent and/or the Lenders in connection with the ... <u>interpretation</u>, ... of this Agreement." (Defs.' Ans. and Counterclaim, Ex. B at 16-17 (emphasis added).)  Defendants may therefore properly assert a Counterclaim for indemnification under Section 14(1) for costs incurred in connection with the interpretation of the November 16, 1998, Restated Security Agreement.  Accordingly, Plaintiff's motion to dismiss Defendants' Counterclaim as it relates to the November 16, 1998, Restated Security Agreement is DENIED.

The Court further finds that no genuine issues of material fact exist and that Defendants are entitled to judgment as a matter of law regarding Defendants' Counterclaim for indemnification pursuant to Section 14(1) of the November 16, 1998, Restated Security Agreement.  Accordingly, Defendants' motion for summary judgment is GRANTED regarding Defendants' claim for indemnification pursuant to Section 14(1) of the November 16, 1998, Restated Security Agreement.

**c. Section 10.4(i)**

12

Defendant also claims a right to indemnification pursuant to Section 10.4 of the November 16, 1998, Restated Credit Agreement. That provision, entitled "Payment of Expenses, Etc.," provides that:

> Borrower shall:
>
> (i) whether or not the transactions hereby contemplated are consummated, pay all reasonable, out-of-pocket costs and expenses of the Agent and Lenders in connection with the preparation, execution and delivery of, preservation of rights under, enforcement of, and, after a Default or Event of Default or, upon the request of the Borrower, refinancing, renegotiation or restructuring of, this Agreement and the other Credit Documents and the documents and instruments referred to therein, and any amendment, waiver or consent relating thereto (including, without limitation, the reasonable fees actually incurred and disbursements of counsel for the Agent and Lenders), and in the case of enforcement of this Agreement or any Credit Document after an Event of Default, all such reasonable, out-of-pocket costs and expenses (including, without limitation, the reasonable fees actually incurred and reasonable disbursements and charges of counsel), for any of the Lenders;

(Defs.' Ans. and Counterclaim, Ex. A at 76.)  Plaintiff contends that Defendants are not entitled to indemnification under § 10.4(i) because Defendants are not being required to preserve or enforce their rights under the agreement in this lawsuit. Defendants contend that they seek through this lawsuit to enforce, *inter alia*, Section 5.3 of the November 16, 1998, Restated Credit Agreement and Section 14(j) of the November 16, 1998, Restated Security Agreement.

13

Section 5.3 of the Restated Credit Agreement, entitled "Enforceable Obligations," provides:

> This Agreement has been duly executed and delivered, and each other Credit Document will be duly executed and delivered, by the respective Consolidated Companies, as applicable, and this Agreement constitutes, and each other Credit Document when executed and delivered will constitute, legal, valid and binding obligations of the Consolidated Companies executing the same, enforceable against such Consolidated Companies in accordance with their respective terms.

(Defs.' Ans. and Counterclaim, Ex. A at 43).

Defendants contend that they are entitled to indemnification under Section 5.3 of the Restated Credit Agreement because Plaintiff's suit alleging the violation of a fiduciary duty disaffirms Plaintiff's representation in Section 14(j) of the Restated Security Agreement. As noted above, however, the plain language of Section 14(j) does not foreclose Plaintiff from contending that the parties' conduct created a fiduciary relationship. Accordingly, Defendants are not entitled to indemnification under Section 5.3 of the Restated Credit Agreement.[7]

---

[7] The parties also dispute whether or not a "Default or Event of Default" triggers a right to indemnification under Section 10.4(i). However, the plain language of the provision does not require indemnification upon the occurrence of a "Default or Event of Default" that does not relate to a "refinancing, renegotiation, or restructuring of ... this Agreement or the other Credit Documents."

14

### 2. The ISDA Master Agreement

Defendants also contend that they are entitled to indemnification under the ISDA Master Agreement.  Section 5 of that agreement, entitled "Events of Default and Termination Events," provides that:

> (a) <u>Events of Default</u>.  The occurrence at any time with respect to a party or, if applicable, any Credit Support Provider of such party or any Specified Entity of such party of any of the following events constitutes an event of default (an "Event of Default") with respect to such party: -
> ...
> (iv) <u>Misrepresentation</u>.  A representation (other than a representation under Section 3(e) or (f)) made or repeated or deemed to have been made or repeated by the party or any Credit Support Provider of such party in this Agreement or any Credit Support Document proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated ....

(Third Am. Compl., Ex. F at PT/S000019.)  Section 3 of that agreement, entitled "Representations," provides that:

> Each party represents to the other party (which representations will be deemed to be repeated by each party on each date on which a Transaction is entered into and, in the case of the representations in Section (3)(f), at all times until the termination of this Agreement) that: -
> ...
> (v) Obligations Binding.  Its obligations under this Agreement and any Credit Support Document to which it is a party constitute its legal, valid and binding obligations, enforceable in accordance with their respective terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

15

(Third Am. Compl., Ex. F at PT/S000017.)   Section 11 of that
agreement provides that:

> A Defaulting Party will, on demand, indemnify and hold
> harmless the other party for and against all reasonable
> out of pocket expenses, including legal fees and Stamp
> Tax, incurred by such other party by reason of the
> enforcement and protection of its rights under this
> Agreement and any Credit Support Document to which the
> Defaulting Party is a part or by reason of the early
> termination of any Transaction, including, but not
> limited to, costs of collection.

(Third Am. Compl., Ex. F at PT/S000026-27.)   Section 5(a)(iii) of
that agreement, entitled "Events of Default and Termination
Events," provides that an "event of default" occurs when a:

> [P]arty or such Credit Support Provider disaffirms,
> disclaims, repudiates or rejects, in whole or in part,
> or challenges the validity of, such Credit Support
> Document.

(Third Am. Compl., Ex. F at PT/S000019).

Defendants first contend that Plaintiff is a defaulting
party under the Master Agreement because Plaintiff has, through
its lawsuit, repudiated the representation in Section 14(j) of
the Restated Security Agreement that the Agreement does not
create any fiduciary relationship between the parties.
Defendants also contend that Plaintiff has breached the above
provisions of the ISDA Master Agreement because Plaintiff has
challenged the validity of the Agreements through its suit.
Plaintiff contends that it has not, through its lawsuit,
disaffirmed, disclaimed, repudiated, rejected or challenged the
validity of the Credit Support Documents.

16

As noted above, the plain language of Section 14(j) of the Restated Security Agreement does not foreclose Plaintiff from contending that the parties' conduct created a fiduciary relationship.  Defendants therefore may not seek indemnification for the purported "enforcement" of either Section 14(j) of the Restated Security Agreement or Section 5 of the Master Agreement. Accordingly, Plaintiff's motion to dismiss Defendants' Counterclaim as it relates to the ISDA Master Agreement is GRANTED.

### 3. The August 31, 2000, Commitment Letter

Defendants also seek indemnification pursuant to the August 31, 2000, Commitment Letter.  Paragraph F of the August 31, 2000 Commitment Letter provides:

> 1. <u>Indemnification</u>.  You further agree to indemnify and hold harmless SunTrust Equitable Securities and each Lender (including SunTrustBank) and each director, officer, employee, affiliate, and agent thereof (each, in "Indemnified Person") against, and to reimburse each Indemnified Person, upon its demand, for any losses, claims, damages, liabilities or other expenses ("Losses") incurred by such indemnified Person insofar as such Losses arise out of or in any way relate to or result from this Commitment Letter, the Fee Letter or the financing contemplated hereby, including, without limitation, Losses participating in any legal proceeding relating to any of the foregoing (whether or not such Indemnified Person is a party thereto); provided that the foregoing shall not apply to any Losses to the extent that such losses result from the gross negligence or willful misconduct of such Indemnified Person.  Your obligations under this paragraph shall remain effective whether or not definitive financing documentation is expected and notwithstanding any termination of the Commitment Letter.

17

> ...
> 3. <u>Expenses</u>. In further consideration of the
> commitments and undertakings of SunTrust hereunder, and
> recognizing that in connection herewith SunTrust will
> be incurring certain costs and expenses (including,
> without limitation, fees and disbursements or counsel,
> and costs and expenses for syndication, due diligence,
> transportation, duplication, mailings, messenger
> services, computer, appraisal, audit and insurance),
> you hereby agree to pay, or reimburse SunTrust on
> demand for, all such reasonable costs and expenses
> (whether incurred before or after the date hereof),
> regardless of whether any of the transactions
> contemplated hereby are consummated.  You also agree to
> pay all reasonable costs and expenses of SunTrust
> (including, without limitation, fees and disbursements
> of counsel) incurred in connection with the enforcement
> of any of their rights and remedies hereunder.  Your
> obligation in respect of costs and expenses shall
> survive the expiration or termination of this
> Commitment Letter.

(Pl.'s Third Am. Compl., Ex. I at PT/S000209.)

Plaintiff first contends that the Commitment Letter does not

provide a right to indemnification because it was superseded by

the 2000 Credit Agreement.  Defendants contend that the

Commitment letter was not superseded by the 2000 Credit Agreement

because Plaintiff has asserted a claim based upon the letter and

that the Commitment Letter was incorporated into the Second

Amended and Restated Credit Agreement.

Section 10.14 of the Second Amended and Restated Credit

Agreement, entitled "Headings Descriptive; Entire Agreement"

provides:

> The headings of the several sections and subsections of
> this Agreement are inserted for convenience only and
> shall not in any way affect the meaning or construction
> of any provision of this Agreement.  This Agreement,

18

> the other Credit Documents, and the agreements and
> documents required to be delivered pursuant to the
> terms of this Agreement constitute the entire agreement
> among the parties hereto and thereto regarding the
> subject matters hereof and thereof and supersede all
> prior agreements, representations and understandings
> related to such subject matters.

(Defs.' Ans. and Counterclaim, Ex. B at PT/S0002524.)  "Credit

Documents" is defined in the Second Amended and Restated Credit

Agreement as:

> [T]his Agreement, the Notes, the Subsidiary Guaranties,
> the Security Agreement, and all other instruments,
> documents, certificates, agreements and writings
> executed in connection herewith, and any amendments
> thereto or restatements thereof.

(Defs.' Ans. and Counterclaim, Ex. B at PT/S002451.)

Plaintiff contends that the August 31, 2000, Commitment

Letter is not a "Credit Document" because it was executed two

months after the 2000 Credit Agreement and therefore was not

"executed in connection herewith" the documents enumerated in the

section because the phrase "in connection herewith" purportedly

means "at the same time" as the Agreement.  However, the plain

language of the agreement does not limit "agreements and writings

in connection therewith" to any particular time frame.[8]

Moreover, as Defendants note, the other enumerated documents –

the Notes, the Subsidiary Guaranties, and the Security Agreement

– were not entered into at the same time as the Agreement, but

---

[8] Plaintiff contends that the dictionary definition of
"herewith" is "along with this."  Even by that definition, no
time frame is specified.

19

are still part of the definition of "Credit Documents."  The
plain language of the agreement therefore does not support
Plaintiff's contention that the August 31, 2000, Commitment
Letter is not a "Credit Document" as defined in the Second
Amended and Restated Credit Agreement.

Plaintiff next contends that, even if the August 31, 2000,
Commitment Letter was not superseded by the by the 2000 Credit
Agreement, Defendants are not entitled to indemnification under
the terms of the August 31, 2000, Commitment Letter.  However,
the plain terms of the letter require Plaintiff to indemnify
Defendant "for any losses, claims, damages, liabilities or other
expenses," including attorney's fees, that "arise out of or in
any way relate to or result from this Commitment Letter, the Fee
Letter or the financing contemplated hereby." (Pl.'s Third Am.
Compl., Ex. I at PT/S000209 (emphasis added).)  In the
"Allegations" section of Plaintiff's Third Amended Complaint,
Plaintiff alleges that "[t]he August 31, 2000 Loan Commitment
Letter from the SunTrust Entities required P&T to hedge at least
50% of its total Syndicated Line of Credit ...." (Pl.'s Third Am.
Compl. ¶ 59.)  Further, under Count VIII of Plaintiff's Third
Amended Complaint, Plaintiff alleges that "[t]he SunTrust
Entities required P&T in its Loan Commitment Letter of August 31,
2000 that [sic] half of the Syndicated Line of Credit be hedged,
regardless of the amount outstanding under such line of credit.

20

This letter was being discussed and agreed upon while the 2000 Swap was entered into and was part of the understanding of P&T when it entered into the 2000 Swap." (Pl.'s Third Am. Compl. ¶ 109.)  Accordingly, based upon the plain language of the agreement and the allegations in Plaintiff's Third Amended Complaint, the Court finds that Plaintiff's suit is one that "arise[s] out of or in any way relate[s] to or result[s] from [the] Commitment Letter."

Plaintiff next contends that, even if Defendants may assert a right of indemnification pursuant to the August 31, 2000, Commitment Letter, Defendants are only entitled to indemnification for expenses related to Count VIII of its Third Amended Complaint - Tying Under the Bank Holding Company Act – because only that Count specifically mentions the August 31, 2000, Commitment Letter.  However, the factual allegation that refers to the August 31, 2000, letter in Paragraph 59 of the Third Amended Complaint is incorporated into all Counts of Plaintiff's Third Amended Complaint. (See Pl.'s Third Am. Compl. ¶¶ 71, 75, 81, 86, 90, 97, 101, and 108.)  Plaintiff therefore incorporated the August 31, 2000, letter into all counts of its Third Amended Complaint.  Accordingly, Plaintiff's motion to dismiss with respect to Defendants' Counterclaim for indemnification pursuant to Paragraph F(1) of the August 31, 2000, Commitment Letter is DENIED.

21

The Court further finds that no genuine issues of material fact exist and that Defendants' are entitled to judgment as a matter of law regarding their Counterclaim for indemnification pursuant to Paragraph F(1) of the August 31, 2000, Commitment Letter.  Under the plain terms of the agreement, and based upon the allegations in Plaintiff's Third Amended Complaint, Plaintiff's suit is one that "arise[s] out of or in any way relate[s] to or result[s] from [the] Commitment Letter." (See Third Am. Compl. Ex. I at PT/S000209.)  Defendants' motion for summary judgment is therefore GRANTED regarding its Counterclaim for indemnification pursuant to the terms of the August 31, 2000, Commitment Letter.

#### 4. First Amended and Restated Revolving Credit Note

Defendants also claim a right to indemnification under the First Amended and Restated Revolving Credit Note.  The relevant portion of that note provides that:

> The Borrower agrees to pay, and save the Lender harmless against any liability for the payment of, all reasonable out-of-pocket costs and expenses, including reasonable attorneys' fees actually incurred, arising in connection with the enforcement by the Lender of any of its rights under this Revolving Credit Note or the Credit Agreement.

(Declaration of Bryan Ford, Ex. C at FWK 0110).  Defendants contend that the right to indemnification under the above provision arises from Plaintiff's allegations that Defendants owed it a fiduciary duty, in violation of the asserted disclaimer

22

of fiduciary duty contained in the Second Amended and Restated
Credit Agreement. As noted above, however, the plain language of
Section 14(j) of the Restated Security Agreement does not
foreclose Plaintiff from contending that the parties' conduct
created a fiduciary relationship. Therefore, Defendants are not
entitled to indemnification under the First Amended and Restated
Revolving Credit Note. Accordingly, Plaintiff's motion to
dismiss Defendants' Counterclaim as it relates to the First
Amended and Restated Revolving Credit Notes is GRANTED.

### C. Defendant Entities Entitled to Indemnification

Having granted summary judgment in favor of Defendants'
regarding their claim to a right of indemnification, the Court
next addresses which Defendant entities may seek to enforce the
relevant indemnification provisions. Plaintiff contends that
only the particular Defendant entities who are party to the
respective agreements under which the Court has found Defendants
entitled to a right of indemnification may be indemnified under
those agreements. Defendants contend that SunTrust Bank is
entitled to collect indemnification under all of the applicable
agreements.

The Court has found that Defendants are entitled to
indemnification pursuant to four provisions of the parties'
various agreements: (1) Section 10.4(iii) of the November 16,
1998 Restated Credit Agreement; (2) Section 10.4(iii) of the 2000

23

Second Amended and Restated Credit Agreement; (3) Section 14(1) of the November 16, 1998, Restated Security Agreement; and (4) Paragraph F(1) of August 31, 2000, Commitment Letter.  The November 16, 1998, Restated Credit Agreement was entered into between Plaintiff and SunTrust Bank, Nashville, N.A.[9] (Defs.' Ans. and Counterclaim, Ex. A at FWK 01375.)  The 2000 Second Amended and Restated Credit Agreement was entered into by Plaintiff and SunTrust Bank, Union Planters Bank National Association, and First Tennessee Bank National Association. (Id., Ex. C at PT/S002438.)  The November 16, 1998, Restated Security Agreement was entered into between Plaintiff and SunTrust Bank, Nashville, N.A. "as Agent for itself and any other lenders now or hereafter parties to that certain Restated Credit Agreement between Borrower, Agent and the Lenders, dated as of November 16, 1998 ...." (Id., Ex. B at ST 3213.)  The August 31, 2000, Commitment Letter was entered into between Plaintiff and SunTrust Bank and SunTrust Equitable Securities. (Pl.'s Third Am. Compl., Ex. I at PT/S000207.)

Each Count of Plaintiff's Third Amended Complaint asserts a claim against the "SunTrust Entities" or "Defendant Entities"

---

[9] It is undisputed that, on January 1, 2000, SunTrust Bank - Atlanta and SunTrust Bank - Nashville merged into SunTrust Bank. (See Defs.' Mem. in Opp. to Mot. to Dismiss Counterclaim at 3; Pl.'s Third Am. Compl. ¶ 3("upon information and belief, SunTrust Bank is a successor by merger to SunTrust Bank - Atlanta and SunTrust Bank Nashville, N.A. ....").)

(See Pl.'s Third Am. Compl. ¶¶ 73, 77, 83, 87, 91, 98, 102, 109.)
Plaintiff defines the "SunTrust Entities" as all of the
Defendants in this case. (See Pl.'s Third Am. Compl. at 1.)
Accordingly, Plaintiff asserts all of its claims in this case
against all Defendants.  Moreover, Plaintiff points to no
provision of any of the agreements that allow for indemnification
that limits that indemnification to claims only against the
indemnitee.  Rather, the Court finds that the plain language of
the relevant indemnification agreements is broad enough to
encompass all of Plaintiff's claims in this case, which are all
asserted collectively against all Defendants.

The Court therefore finds that each of the respective
Defendant entities who were party to the agreements under which
the Court has found indemnification appropriate are entitled,
under each of the relevant provisions, to be indemnified for
Defendants total reasonable costs and attorney's fees in
defending Plaintiff's suit.  The collective Defendant entities
may not, however, collect more than the actual reasonable costs
and fees spent in defense of this litigation.  Accordingly, the
Court will allow Defendants a single recovery of their total
reasonable costs and fees in defending Plaintiff's suit.

Defendants shall file with the Court and serve upon
Plaintiff proof of their reasonable costs and attorney's fees in
defending Plaintiff's suit within 15 days from the entry of this

25

order.  Any objection to Defendants' asserted reasonable costs
and attorney's fees shall be filed within 15 days of the receipt
of that filing.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Dismiss
Defendants' Counterclaim for indemnification is GRANTED in part
and DENIED in part, and Defendants' Motion for Summary Judgment
with respect to Defendants' Counterclaim for indemnification is
GRANTED.


So ORDERED this _10 day of May, 2005.


_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 325 in case 2:03-CV-02217 was distributed by fax, mail, or direct printing on May 16, 2005 to the parties listed.

---

Cannon F. Allen
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

John C. Speer
BASS BERRY & SIMS PLC
100 Peabody Place
Ste. 900
Memphis, TN 38103

S. Lawrence Polk
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309--399

Elena C. Parent
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309--399

Sara Margaret Falkinham
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Honorable Jon McCalla
US DISTRICT COURT