IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

POWER & TELEPHONE SUPPLY
COMPANY, INC.,

    Plaintiff,

v.                                          No. 03-2217 Ml/V

SUNTRUST BANKS, INC., SUNTRUST
BANK, SUNTRUST BANK-ATLANTA,
SUNTRUST BANK-NASHVILLE, N.A.,
SUNTRUST EQUITABLE SECURITIES
CORPORATION, and
SUNTRUST CAPITAL MARKETS, INC.,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR RECONSIDERATION OF DISMISSAL OF PLAINTIFF'S INTENTIONAL MISREPRESENTATION AND TENNESSEE CONSUMER PROTECTION ACT CLAIMS**

Before the Court is Plaintiff's Motion for Clarification and for Reconsideration of Dismissal of Plaintiff's Intentional Misrepresentation and Tennessee Consumer Protection Act Claims, filed on January 7, 2005. Defendants responded in opposition on January 24, 2005. A reply from Plaintiff was received on January 31, 2005. For the following reasons, the Court DENIES Plaintiff's motion.

I.    **BACKGROUND**

On December 27, 2004, this Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. In its

order, the Court detailed the events from which this action arose. The Defendant SunTrust entities began doing business with Plaintiff in 1996 at which time Defendants became a participant in Plaintiff's syndicated line of credit.[1] In September of 1996 and January of 1997, Defendants made presentations to Plaintiff highlighting the types of services and products offered by the Defendants.[2] (Pl.'s Third Am. Compl. Exs. A and B (Docket No. 180.) Plaintiff established a syndicated line of credit with a variable interest rate with Defendant SunTrust Bank-Nashville in November of 1998 and increased the line of credit in October of 2000.

In July of 1999, Plaintiff entered into an interest rate swap agreement to hedge against the interest rate on its syndicated line of credit ("1999 Swap Agreement"). Plaintiff entered into a second swap agreement with respect to the interest rate on its syndicated line of credit in July of 2000 ("2000 Swap

---

[1] Defendants provide the following outline of the relationships between the Defendant entities. SunTrust Capital Markets, Inc., is successor to SunTrust Equitable Securities Corporation and is a wholly owned subsidiary of SunTrust Banks, Inc. SunTrust Bank is a wholly owned subsidiary of SunTrust Banks, Inc. SunTrust Bank consolidated SunTrust Bank-Atlanta and SunTrust Bank-Nashville on January 1, 2000, and both were wholly owned subsidiaries of SunTrust Banks, Inc.

[2] A review of the September 16, 1999, presentation given to Plaintiff by Defendant SunTrust Capital Markets reveals that it is a sales presentation which explains the types of products and services offered by Defendants to its clients and outlines transactions performed by Defendants for other SunTrust clients.

2

Agreement"). The 1999 and 2000 Swap Agreements were favorable to Plaintiff until interest rates dropped dramatically between the years 2000 and 2002; Plaintiff terminated the 1999 and 2000 Swap Agreements in 2002. Ultimately, Plaintiff contends that it was damaged in excess of six million dollars due to the drop in interest rates. (Pl.'s Third Am. Compl. ¶ 66.)

Plaintiff filed suit against Defendants to recover its losses under the legal theories of breach of fiduciary duty, breach of contract, agency, misrepresentation, negligence, violation of the Tennessee Consumer Protection Act, common law suitability, and tying under the Bank Holding Company Act. The Court dismissed Plaintiff's claims for breach of contract, misrepresentation, violation of the Tennessee Consumer Protection Act, common law suitability, and tying under the Bank Holding Company Act on December 27, 2004. (Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss of Dec. 27, 2004 (Docket No. 236).) The Court found that Plaintiff's claims for negligence, breach of fiduciary duty, and agency survived dismissal under Federal Rule of Civil Procedure 12(b)(6) on the narrow grounds that if Plaintiff were able to produce written agreements evidencing a fiduciary relationship, then Plaintiff would be able to state a claim under those causes of action. (Id.)

Through the present motion, Plaintiff seeks a ruling that its claims for breach of fiduciary duty against Defendant

3

SunTrust Bank-Nashville and Defendant SunTrust Equitable Securities survive independently from the claim against Defendant SunTrust Bank-Atlanta.  Plaintiff also requests reconsideration of the dismissal of its claim for intentional misrepresentation and its claim under the Tennessee Consumer Protection Act. Plaintiff has presented no new evidence in support of its motion, but rather has reasserted the arguments that the Court has already rejected.  Having reviewed the record and the parties' submissions, the Court finds that reconsideration is not warranted.

**II.   STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 60, a party may seek relief from a court order.  In particular, "the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment.  Fed. R. Civ. P. 60(b).

Plaintiff requests that the Court reconsider the dismissal of certain of Plaintiff's claims under Federal Rule of Civil

4

Procedure 12(b)(6). A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true. Saylor v. Parker Seal Co., 975 F.2d 252, 254 (6th Cir. 1992). Furthermore, the court must construe all of the allegations in the light most favorable to the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "A court may dismiss a [claim under 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III. BREACH OF FIDUCIARY DUTY

The Court noted in its Dismissal Order of December 27, 2004, that in Tennessee a fiduciary duty does not exist as a matter of law between a bank and its customers. First Tennessee Bank National Assn. v. C.T. Resorts Co., Inc., 1995 Tenn. App. LEXIS 580, *15 ("Tennessee law generally does not impose fiduciary or other special duties on banks with respect to their customers.")(citing Domestic Sewing Mach. Co. v. Jackson, 83 Tenn. 418 (Tenn. 1885)). In other words, the law presumes that a bank does not stand as a fiduciary vis-a-vis its customers. However, the law does not foreclose banks from entering into fiduciary relationships.

5

In light of Tennessee law and the contractual language governing the 1999 and 2000 Swap Agreements, the Court found that "should Plaintiff present sufficient facts to evidence a fiduciary relationship embodied in a writing, Defendants may have owed Plaintiff a fiduciary duty with respect to the 1999 and 2000 Swap Agreements." (Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss of Dec. 27, 2004 at 11-12 (Docket No. 236).) In making this finding, the Court expressly considered the following contractual language from the 1999 and 2000 Swap Agreements:

> SunTrust acts as principal only and does not act as advisor, agent, broker, or fiduciary for or with respect to any counterparty (*unless otherwise expressly agreed in a written engagement letter*).

(Pl.'s Third Am. Compl. Ex. F at PT/S000038 and Ex. H at PT/S000093 (Docket No. 180)(emphasis added).) The contracts also provide the following:

> In entering into any OTC risk management transaction, you should take into consideration that, *unless you and SunTrust have established in writing an express financial advisory or other fiduciary relationship or you and SunTrust have expressly agreed in writing that you will be relying on SunTrust's recommendations as the primary basis for making your trading or investment decisions*, SunTrust is acting solely in the capacity of an arm's-length contractual counterparty and not in the capacity of your financial advisor or fiduciary.

(Id. Ex. F at PT/S000039 and Ex. H at PT/S000092) (emphasis added).) This language contemplates that the SunTrust entities

6

may, at times, undertake fiduciary relationships, but that such relationships must be established in writing.

Plaintiff has moved for clarification as to whether the Court's December 27, 2004, Dismissal Order applies to Defendant SunTrust Bank-Atlanta, Defendant SunTrust Bank-Nashville, and Defendant SunTrust Equitable Securities or solely to Defendant SunTrust Bank-Atlanta as the signatory to the 1999 and 2000 Swap Agreements.  Specifically, Plaintiff contends that only Defendant SunTrust Bank-Atlanta may benefit from the contractual language regarding the parties' relationship and risk disclosures.

Plaintiff asserts that a fiduciary relationship exists between Plaintiff and Defendants SunTrust Bank-Nashville and SunTrust Equitable Securities because these entities acted as a financial advisor and had a relationship of trust with Plaintiff. Plaintiff contends that a fiduciary relationship was created because Defendant SunTrust Bank-Nashville and Defendant SunTrust Equitable Securities met with and engaged in numerous conversations with employees of Plaintiff, became Plaintiff's primary banker, and offered a variety of services to Plaintiff. (Pl.'s Third Am. Compl.¶ 15-18.)  Plaintiff further contends that Defendant SunTrust Bank-Nashville and Defendant SunTrust Equitable Securities strongly urged Plaintiff to enter into the 1999 and 2000 Swap Agreements.

7

Under Tennessee law, a bank is not, as a matter of law, a fiduciary with respect to its customers. <u>Oak Ridge Precision Industries, Inc. v. First Tennessee Bank Nat'l Ass'n</u>, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)("Although fiduciary relationships may arise whenever confidence is reposed by one party in another who exercises dominion and influence, the dealings between a lender and borrower are not inherently fiduciary absent special facts and circumstances.") The Court has determined that the facts and circumstance of this case do not give rise to a fiduciary relationship unless Plaintiff can establish that the parties agreed in writing to create a fiduciary relationship.

In addition to Tennessee law which disfavors the finding of a fiduciary relationship in the context of a banking relationship, Plaintiff has entered into contracts with Defendant entities and received written information from Defendant entities which specifically indicate that the parties do not have a fiduciary relationship. A review of the record reveals that Defendants SunTrust Bank-Nashville and SunTrust Equitable Securities, as well as Defendant SunTrust Bank-Atlanta, have expressly disavowed a fiduciary relationship with Plaintiff.

In November of 1998, Plaintiff and Defendant SunTrust Bank-Nashville entered into a Restated Security Agreement which concerns the credit arrangement between the parties. The Restated Security Agreement contains the following language:

8

> No Fiduciary Relationship. Nothing contained herein or in any related document shall be deemed to create any partnership, joint venture or other fiduciary relationship between Agent and Borrower and/or any Lender Borrower for any purpose.

(Exs. to Defs.' Statement of Undisputed Facts at Ex. 352 at ST3228.) This contract expressly indicates that Defendant SunTrust Bank-Nashville does not stand as a fiduciary to Plaintiff with respect to the parties' debtor-creditor relationship.

On July 1, 1999, Defendant SunTrust Bank-Atlanta and Plaintiff entered into a Master Agreement with respect to the swap transactions. The Master Agreement governs the 1999 and 2000 Swap Agreements, which concern the interest rates associated with Plaintiff's line of credit with Defendants. The Restated Security Agreement, governing the parties' debtor-creditor relationship, is referenced in the Master Agreement and the Master Agreement is incorporated into the 1999 and 2000 Swap Agreements. The contractual language of the Restated Security Agreement, which is part of the 1999 and 2000 Swap Agreements, provides that Plaintiff and Defendant SunTrust Bank-Nashville do not have a fiduciary relationship.

Further, a review of the presentation given to Plaintiff by Defendant SunTrust Equitable Securities regarding the 1999 Swap transaction reveals that it contains the following language:

> The ultimate decision to proceed with any transaction rests solely with the Company. SunTrust is not acting

9

> as the Company's advisor. Therefore, prior to entering into any proposed transaction, the Company should determine, without reliance upon SunTrust or its affiliates, the economic risks and merits, as well as the legal, tax, and accounting characteristics and consequences of the transaction and that it is able to assume these risks.

(Pl.'s Third Am. Compl. Ex. E at 10.)  This language expressly disclaims the existence of a fiduciary relationship between the parties and plainly states that "SunTrust is not acting as the Company's advisor" with respect to the 1999 Swap transaction. Moreover, this language indicates that Plaintiff was on notice that Defendant SunTrust Equitable Securities was not acting as its advisor even before Plaintiff entered into the 1999 and 2000 Swap Agreements.

In light of Tennessee law disfavoring the finding of a fiduciary relationship between a bank and its customers and the language provided in contracts signed by Plaintiff as well as the written notice given to Plaintiff that a fiduciary relationship did not exist between the parties, the Court finds that Plaintiff must present facts evidencing a fiduciary relationship embodied in a writing to maintain a claim for breach of fiduciary duty against any of the Defendants. Accordingly, the Court hereby clarifies that its December 27, 2004, Dismissal Order applies to Defendant SunTrust Bank-Nashville and Defendant SunTrust Equitable Securities as well as Defendant SunTrust Bank-Atlanta.

10

## IV.     INTENTIONAL MISREPRESENTATION

In its Dismissal Order of December 27, 2004, the Court dismissed Plaintiff's claim for intentional misrepresentation. Plaintiff moves the Court to reconsider this dismissal based on the contention that Plaintiff has met the pleading requirement to allege intentional misrepresentation. As the Court explained in its Dismissal Order, in Tennessee, claims for intentional misrepresentation are analyzed as claims for fraud. Shahrdar v. Global Housing, Inc., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998). Both Tennessee and the Sixth Circuit have heightened pleading requirements to sustain an action for fraud. Fed. R. Civ. P. 9(b); Tenn. Civ. Proc. Rule 9.02.; Oak Ridge Precision Indus., 835 S.W.2d at 29[3]; Coffey v. Fomax, 2 F.3d 157, 162 (6th Cir. 1991)[4]; Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988).

---

[3] Under Tennessee law, "[t]he elements of fraud are an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made 'knowingly' or 'without belief in its truth' or 'recklessly' without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact." Oak Ridge Precision Indus., 835 S.W.2d at 29.

[4] To successfully plead fraud, the Sixth Circuit requires, at a minimum, that a plaintiff allege: the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. Coffey, 2 F.3d at 162.

11

The record reveals that Plaintiff attempts to assert numerous separate incidents as amounting to misrepresentations. Because each of the alleged misrepresentations asserted by Plaintiff fails to met the heightened pleading requirements to assert a claim for fraud, Plaintiff cannot maintain a cause of action for intentional misrepresentation.

Plaintiff has moved the Court to reconsider the dismissal of its misrepresentation claim on the assertion that Defendants misrepresented that they would act as financial advisors to Plaintiff and misrepresented their intent to create an advisory relationship with Plaintiff. (Pl.'s Third Am. Compl. ¶ 13 and 14.) In particular, Plaintiff relies on consumer presentations made by the "SunTrust Entities" to Plaintiff in September of 1996 and January of 1997. (Id. ¶ 13.) The Court reviewed these presentations and considered Plaintiff's arguments with respect to these presentations when it dismissed Plaintiff's misrepresentation claim.

The Court finds that the sales presentations relied upon by Plaintiff, which were provided to Plaintiff over two years before Plaintiff entered into the swap transactions, are insufficient to state a claim for intentional misrepresentation. A claim for fraud must be based on an "intentional misrepresentation with regard to a material fact." <u>Oak Ridge Precision Indus.</u>, 835 S.W.2d at 29. Plaintiff contends that Defendants misrepresented

12

an intent to act as Plaintiff's financial advisor.  The Court finds that statements in the sales presentations at issue such as:

> Advisory Service.  A desire to act as a financial advisor, not just a placement service.
>
> Commitment.  Senior Specialists will assist the client throughout the process helping them structure a marketable transaction that best meets the company's needs.
>
> Follow-Through.  We stay involved with the client after the transaction is completed, thereby facilitating conversation regarding future transactions and reinforcing our role as financial advisor.

(Pl.'s Third Am. Compl. at Ex. A at S1218 and S1222 and Ex. B at S1490 and S1494), are not actual or material facts, but rather are merely future considerations.  Although Plaintiff also alleges that the Defendant entities "assured" Plaintiff that it was a financial advisor, Plaintiff does not specifically allege who made such assurances or when they were made.  (Id. at ¶ 15.)  Further, Plaintiff has failed to allege a fraudulent scheme or the fraudulent intent of Defendants.  Specifically, Plaintiff has failed to allege that Defendants made sales presentations to Plaintiff in 1996 and 1997 as part of a fraudulent scheme to induce Plaintiff to enter into the Swap Agreements in 1999 and 2000 which would become unfavorable to Plaintiff when interests rates dropped to historical lows.

Plaintiff has also alleged that Defendants misrepresented that they would renegotiate the Swap Agreements should interest

13

rates fall and the Swap Agreements become unfavorable to Plaintiff. Plaintiff, however, has neither alleged who made such assurances on behalf of Defendants, nor when and where any such statements were made. In other words, Plaintiff has not stated this alleged fraud with the requisite particularity. Further, the Court has already determined that evidence of any such misrepresentation would be inadmissible under the parole evidence rule.

In addition, Plaintiff has alleged that Defendants misrepresented that the Swap Agreements were appropriate for Plaintiff and misrepresented the risks and suitability of the Swap Agreements. Plaintiff, however, has not met the heightened pleading requirement to show that Defendants committed a fraud with respect to the 1999 and 2000 Swap Agreements. Plaintiff's vague allegation that it was urged to enter into the Swap Agreements is insufficient to state a cause of action for misrepresentation.

Because Plaintiff has not pled any misrepresentation or fraud with sufficient particularity, the Court dismissed Plaintiff's claim for misrepresentation. In making its request for reconsideration, Plaintiff has merely reasserted arguments it has already advanced and the Court has already rejected. Accordingly, the Court DENIES Plaintiff's motion to reconsider the Court's December 27, 2004, dismissal order.

## V.     TENNESSEE CONSUMER PROTECTION ACT

Plaintiff contends that the Court should reconsider the dismissal of Plaintiff's claim under the Tennessee Consumer Protection Act as untimely. The Tennessee Consumer Protection Act provides for a statute of limitations of one year. Tenn. Code Ann. § 47-18-110. In Tennessee, a "cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." Potts v. Celotex Corp., 796 S.W.2d 678, 680 (Tenn. 1990); see also Shadrick v. Coker, M.D., 963 S.W.2D 726, 733-34 (Tenn. 1998).

In its motion for reconsideration, Plaintiff asserts that the commencement of a limitations period is a fact specific inquiry and therefore its claim under the Tennessee Consumer Protection Act must necessarily survive a motion to dismiss. Plaintiff also contends that its claim survives because it was unaware of the wrongful conduct of Defendants.

"A court may dismiss a [claim under 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The Court has already found that there are no set of facts which may be proven consistent with the Plaintiff's allegations under which Plaintiffs may

15

plausibly assert that they were not aware of the accrual of this cause of action within the statutory limitations period.

Plaintiff simply cannot assert facts sufficient to overcome the limitations period and contemporaneously maintain the allegations asserted in its Third Amended Complaint. Therefore, Plaintiff is barred by the statute of limitations from asserting a claim under the Tennessee Consumer Protection Act for which this Court may grant relief. Accordingly the Court DENIES Plaintiff's motion to reconsider the Courts dismissal of Plaintiff's claims under the Tennessee Consumer Protection Act.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to reconsider the Court's dismissal of Plaintiff's claims for intentional misrepresentation and violation of the Tennessee Consumer Protection Act. The Court GRANTS Plaintiff's motion for clarification and hereby clarifies that the Court's ruling with respect fo Plaintiff's claim for breach of fiduciary duty applies to all of the Defendant entities.

So ORDERED this 10th day of May, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

16

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 326 in case 2:03-CV-02217 was distributed by fax, mail, or direct printing on May 16, 2005 to the parties listed.

---

Cannon F. Allen
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

John C. Speer
BASS BERRY & SIMS PLC
100 Peabody Place
Ste. 900
Memphis, TN 38103

S. Lawrence Polk
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309--399

Elena C. Parent
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309--399

Sara Margaret Falkinham
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Honorable Jon McCalla
US DISTRICT COURT