FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE  MAY 10 PM 2: 25
WESTERN DIVISION

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | | |
|---|---|---|
| POWER & TELEPHONE SUPPLY COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2217 Ml/V |
| | ) | |
| SUNTRUST BANKS, INC., SUNTRUST BANK, SUNTRUST BANK-ATLANTA, SUNTRUST BANK-NASHVILLE, N.A., SUNTRUST EQUITABLE SECURITIES CORPORATION, and SUNTRUST CAPITAL MARKETS, INC., | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendants' Motion for Summary Judgment, filed on January 18, 2005.  Plaintiff responded in an opposition received on March 4, 2005.  A reply was received from Defendants on March 28, 2005.  For the following reasons, the Defendants' motion is GRANTED.[1]

I.    BACKGROUND

This action arises out of a financial transaction between the parties involving interest rate swap agreements.

A.    Factual Background

The facts of this case are well chronicled in the Court's

---

[1] As noted in Section III(D) of this order, Defendants' motion for summary judgment with respect to their counterclaims for indemnification will be addressed in a separate order.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 5-16-05

327

December 27, 2004, Dismissal Order.   (Order Granting in Part and
Den. in Part Defs.' Mot. to Dismiss of Dec. 27, 2004 (Docket No.
236).)   The Defendant SunTrust entities began doing business with
Plaintiff in 1996 at which time Defendants became a participant
in Plaintiff's syndicated line of credit.[2]   Plaintiff utilizes
its syndicated line of credit to obtain working capital to fund
its inventory purchases.

In September of 1996 and January of 1997, Defendants made
presentations to Plaintiff highlighting the types of services and
products offered by the Defendants.[3]   (Pl.'s Third Am. Compl.
Exs. A and B (Docket No. 180).)   Eventually Defendant SunTrust
Bank-Nashville became Plaintiff's primary bank and either
provided requested services to Plaintiff or referred Plaintiff to
another SunTrust Entity to provide requested services.   Plaintiff
established a syndicated line of credit with a variable interest
rate with Defendant SunTrust Bank-Nashville in November of 1998

---

[2] Defendants provide the following outline of the
relationships between the Defendant entities.   SunTrust Capital
Markets, Inc., is successor to SunTrust Equitable Securities
Corporation and is a wholly owned subsidiary of SunTrust Banks,
Inc.   SunTrust Bank is a wholly owned subsidiary of SunTrust
Banks, Inc.   SunTrust Bank consolidated SunTrust Bank-Atlanta and
SunTrust Bank-Nashville on January 1, 2000, and both were wholly
owned subsidiaries of SunTrust Banks, Inc.

[3] A review of the September 16, 1999, presentation given to
Plaintiff by Defendant SunTrust Capital Markets reveals that it
is a sales presentation which explains the types of products and
services offered by Defendants to its clients and outlines
transactions performed by Defendants for other SunTrust clients.

and increased the line of credit in October of 2000.  The swap
agreements upon which this action is based are related to the
interest rates associated with these syndicated lines of credit.

In April of 1997, Defendant SunTrust Bank-Nashville and
Defendant SunTrust Equitable Securities Corporation approached
Plaintiff about hedging the interest rate on its syndicated line
of credit but Plaintiff decided to purchase a five-year interest
rate cap from First Tennessee Bank rather than a product from
Defendants.  In 1999, Defendant SunTrust Equitable Securities
Corporation made a presentation to Plaintiff explaining interest
rate swap agreements.  (Id. Ex. E.)

In July of 1999, Plaintiff entered into an interest rate
swap agreement with Defendants at a fixed rate of 6.56% on the
notional amount of twenty millions dollars for a five year term
to hedge against the interest rate on its syndicated line of
credit ("1999 Swap Agreement").  (Id. Ex. F.)  In July of 2000,
Plaintiff entered into a second swap agreement with a fixed
interest rate of 7.37% and a variable rate equal to London
Interbank Offered Rate on the notional amount of twenty million
dollars (the "2000 Swap Agreement").  (Id. Ex. H.)

The Swap Agreements were favorable to Plaintiff until
interest rates dropped dramatically between the years 2000 and
2002, causing Plaintiff to have to make payments to Defendants
under the terms of the Agreements.  During the same time period,

Plaintiff's borrowing declined until Plaintiff was no longer borrowing on its syndicated line of credit.  However, because the Swap Agreements remained in effect, Plaintiff was required to continue making payments to Defendants.  Plaintiff contends that it was damaged in excess of six million dollars due to the drop in interest rates.  (Pl.'s Third Am. Compl. ¶ 66.)  In October of 2002, Plaintiff paid Defendants $3,472,500 to terminate the 1999 and 2000 Swap Agreements.  (Id. ¶ 63.)

**B.    Procedural Background**

On May 4, 2004, Plaintiff filed its Third Amended Complaint in this action.  (Pl.'s Third Am. Compl.)  In its Third Amended Complaint, Plaintiff asserted claims against Defendants based on the theories of breach of fiduciary duty, breach of contract, agency, misrepresentation, negligence, violation of the Tennessee Consumer Protection Act, common law suitability, and tying under the Bank Holding Company Act.

On May 24, 2004, Defendants moved to dismiss each of Plaintiff's claims.  (Defs.' Mot. to Dismiss Third Am. Compl. (Docket No. 191).)  The Court filed an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss on December 27, 2004.  (Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss of Dec. 27, 2004 (Docket No. 236).)  In its December 27, 2004, Dismissal Order the Court dismissed Plaintiff's claims for breach of contract, misrepresentation, violation of the Tennessee

4

Consumer Protection Act, common law suitability, and tying under the Bank Holding Company Act.  The Court, however, found that Plaintiff's claims for breach of fiduciary duty, agency, and negligence survived dismissal on the narrow grounds that, were Plaintiff able to produce written agreements evidencing a fiduciary relationship, then Plaintiff would be able to state a claim under those causes of action.  (Id.)  This ruling applied to all of the Defendant entities.  (Order Granting in Part and Den. in Part Pl.'s Mot. for Clarification and for Recons. of Dismissal of Pl.'s Intentional Misrepresentation and Tennessee Consumer Protection Act Claims.)

Through the present motion, Defendants move for summary judgment with respect to Plaintiff's surviving claims.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

5

251-252 (1989).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## III. ANALYSIS

Defendants have moved the Court for summary judgment with respect to Plaintiff's claims under the theories of breach of fiduciary duty, agency, and negligence. The Court will address each of these claims in turn.

### A.    Fiduciary Duty

Plaintiff alleges that the Defendant entities breached a fiduciary duty owed to Plaintiff. "A fiduciary relationship has been defined as 'one founded on trust or confidence reposed by

6

one Person in the integrity and fidelity of another."   <u>First</u>

<u>Tennessee Bank National Assn. v. C.T. Resorts CO., Inc.</u>, 1995

Tenn. App. LEXIS 580, *15 (Tenn. Ct. App. 1995)(citing Black's

Law Dictionary 625-26 (6th ed. 1990)[4]).   Fiduciary duties

constitute the highest standard of duty imposed by law. <u>Id.</u>

---

[4] Black's Law dictionary provides the following definitions:
fiduciary.  A person who is required to act for the benefit
of another person on all matters within the scope of their
relationship; one who owes to another the duties of good
faith, trust, confidence, and candor <the corporate officer
is a fiduciary to the corporation>. 2. One who must exercise
a high standard of care in managing another's money or
property <the beneficiary sued the fiduciary for investing
in speculative securities>.

fiduciary duty.  A duty of utmost good faith, trust,
confidence, and candor owed by a fiduciary (such as a lawyer
or corporate officer) to the beneficiary (such as a lawyer's
client or a shareholder); a duty to act with the highest
degree of honesty and loyalty toward another person and in
the best interests of the other person (such as the duty
that one partner owes to another).

fiduciary relationship.  A relationship in which one person
is under a duty to act for the benefit of another on matters
within the scope of the relationship. • Fiduciary
relationships -- such as trustee-beneficiary, guardian-ward,
principal-agent, and attorney-client -- require an unusually
high degree of care. Fiduciary relationships usually arise
in one of four situations: (1) when one person places trust
in the faithful integrity of another, who as a result gains
superiority or influence over the first, (2) when one person
assumes control and responsibility over another, (3) when
one person has a duty to act for or give advice to another
on matters falling within the scope of the relationship, or
(4) when there is a specific relationship that has
traditionally been recognized as involving fiduciary duties,
as with a lawyer and a client or a stockbroker and a
customer.

(Black's Law Dictionary, 8th Ed. 2004)

"Tennessee law generally does not impose fiduciary or other special duties on banks with respect to their customers." First Tennessee, 1995 Tenn. App. LEXIS 580 at *15 (citing Domestic Sewing Mach. Co. v. Jackson, 83 Tenn. 418 (Tenn. 1885));[5] see also Glazer v. First Am. Nat'l Bank, 930 S.W.2d 546, 550 (Tenn. 1990)(explaining that under Tennessee law, a bank has no fiduciary duties with respect to the debtor/creditor relationship); Oak Ridge Precision Industries, Inc. v. First Tennessee Bank Nat'l Ass'n, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)("Although fiduciary relationships may arise whenever confidence is reposed by one party in another who exercises dominion and influence, the dealings between a lender and borrower are not inherently fiduciary absent special facts and circumstances.")

Plaintiff contends that Defendants established a fiduciary relationship with Plaintiff through their course of dealings with Plaintiff. In particular, Plaintiff contends that Defendants SunTrust Bank-Nashville and SunTrust Equitable Securities represented to Plaintiff that the were acting as Plaintiff's advisor with respect to the 1999 and 2000 Swap Agreements. (Pl.'s Third Am. Compl. ¶¶ 46 and 54.) Plaintiff alleges that

---

[5] Plaintiff has cited no cases under Tennessee law, and the Court has found no such cases, supporting the proposition that a bank owes a fiduciary duty under facts similar to the instant case.

8

Defendants then breached this fiduciary duty with respect to the 1999 and 2000 Swap Agreements.  Plaintiff also contends that the 1999 and 2000 Swap Agreements were inappropriate and unsuitable for Plaintiff and that Defendants did not evaluate the appropriateness of or risk involved in either swap transaction. Plaintiff contends that Defendants breached a fiduciary duty by recommending that Plaintiff enter into the 1999 and 2000 Swap Agreements because these transactions were not appropriate for Plaintiff.

In its December 27, 2004, dismissal order, the Court found that Plaintiff's claim for breach of fiduciary duty survived dismissal on the narrow grounds that "should Plaintiff present sufficient facts to evidence a fiduciary relationship embodied in a writing, Defendants may have owed Plaintiff a fiduciary duty with respect to the 1999 and 2000 Swap Agreements."  (Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss of Dec. 27, 2004 at 11-12 (Docket No. 236).)  This ruling applied to all of the Defendant entities.  (Order Granting in Part and Den. in Part Pl.'s Mot. for Clarification and for Reconsideration of Dismissal of Pl.'s Intentional Misrepresentation and Tennessee Consumer Protection Act Claims.)  The Court has determined that under Tennessee law, the facts and circumstances of this case do not give rise to a fiduciary relationship as a matter of law. (Id.)  The Court based the determination that Plaintiff must

present evidence of a fiduciary relationship embodied in a

writing on Tennessee law, which disfavors finding a fiduciary

relationship between a bank and its customers, and on contracts

and other writings disavowing the existence of a fiduciary

relationship between the parties.

In its December 27, 2004, Dismissal Order, the Court

expressly considered the following contractual language from the

1999 and 2000 Swap Agreements:

> SunTrust acts as principal only and does not act as
> advisor, agent, broker, or fiduciary for or with
> respect to any counterparty (*unless otherwise expressly
> agreed in a written engagement letter*).
>
> . . . .
>
> In entering into any OTC risk management transaction,
> you should take into consideration that, *unless you and
> SunTrust have established in writing an express
> financial advisory or other fiduciary relationship or
> you and SunTrust have expressly agreed in writing that
> you will be relying on SunTrust's recommendations as
> the primary basis for making your trading or investment
> decisions*, SunTrust is acting solely in the capacity of
> an arm's-length contractual counterparty and not in the
> capacity of your financial advisor or fiduciary.

(Pl.'s Third Am. Compl. Ex. F at PT/S000038-39 and Ex. H at

PT/S000092-93 (Docket No. 180)(emphasis added).)  This language

contemplates that the SunTrust entities may, at times, undertake

fiduciary relationships, but that such relationships must be

established in writing.

The Court also reviewed the Restated Security Agreement

entered into between Plaintiff and Defendant SunTrust

10

Bank-Nashville in November of 1998, which concerns the credit

arrangement between the parties related to the swap transactions.

The Restated Security Agreement contains the following language:

> No Fiduciary Relationship.  Nothing contained herein or
> in any related document shall be deemed to create any
> partnership, joint venture or other fiduciary
> relationship between Agent and Borrower and/or any
> Lender Borrower for any purpose.

(Exs. to Defs.' Statement of Undisputed Facts at Ex. 352 at

ST3228.)  This contract expressly indicates that Defendant

SunTrust Bank-Nashville does not stand as a fiduciary to

Plaintiff with respect to the parties' debtor-creditor

relationship.  Further, the Restated Security Agreement is

referenced in the Master Agreement governing the 1999 and 2000

Swap Agreements and incorporated into the 1999 and 2000 Swap

Agreements.

The Court also assessed Plaintiff's contention that the

SunTrust Entities gave Plaintiff a written proposal regarding the

1999 Swap transaction advising Plaintiff to enter into the 1999

Swap Agreement from Defendants.  (Pl.'s Third Am. Compl. Ex. E.)

A review of the proposal revealed that it is a presentation

regarding swap transactions from Defendant Sun Equitable

Securities containing the following language:

> The ultimate decision to proceed with any transaction
> rests solely with the Company.  SunTrust is not acting
> as the Company's advisor.  Therefore, prior to entering
> into any proposed transaction, the Company should
> determine, without reliance upon SunTrust or its
> affiliates, the economic risks and merits, as well as

11

> the legal, tax, and accounting characteristics and
> consequences of the transaction and that it is able to
> assume these risks.

(Id. at 10.)  This language expressly disclaims the existence of
a fiduciary relationship between the parties and plainly states
that "SunTrust is not acting as the Company's advisor" with
respect to the 1999 Swap transaction.

Defendants contend that they are entitled to summary
judgment on Plaintiff's claim for breach of fiduciary duty
because Plaintiff has failed to put forth any evidence of a
written agreement evidencing a fiduciary relationship.  Plaintiff
continues to assert that a fiduciary relationship was created
because Defendants acted as Plaintiff's advisor and influenced,
recommended, and urged Plaintiff to enter into various financial
commitments and transactions.  (Pl's Resp. to Defs' Mot. for
Summ. J. and in Op. To Pl.'s Mot. for Partial Summ. J.)
Plaintiff has placed numerous documents in the record, but none
of these documents support Plaintiff's contention that the
parties had a fiduciary relationship.  (Pl.'s Exs. to Resp. to
Defs.' Mot. for Summ. J. and in Op. to Pl.'s Mot. for Partial
Summ. J. and Pl.'s Resp. to Defs.' Statement of Undisputed Facts
as to Which There is No Genuine Issue to Be Tried. at Coll. 1 and
Coll. 6)

For example, Plaintiff introduces letters from SunTrust to
Plaintiff which refer to the parties as "financial partners" and

in a "business relationship" and explains that Defendants sought to help Plaintiff understand Defendants "capabilities and capacity to assist you and the company in managing interest rate risk and growing credit needs."  (Id. at Coll. 6 at ST2360 and 2362.)  Plaintiff also relies on statements in sales presentations made to Plaintiff in 1996 and 1997.[6]  However, the Court finds that the statements in the presentations are not sufficient to create a genuine issue of material fact regarding whether Defendants owed a fiduciary duty to Plaintiff as a matter of law.

Having reviewed the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to present sufficient facts to establish that a genuine issue of material fact exists regarding whether a fiduciary relationship between the parties existed.  In particular, Plaintiff has not presented any evidence that the parties stand in a fiduciary relationship

---

[6] The 1996 and 1997 sales presentations given to Plaintiff by Defendant SunTrust Capital Markets include statements such as:
>        Advisory Service.  A desire to act as a financial
>        advisor, not just a placement service.
>        Commitment.  Senior Specialists will assist the client
>        throughout the process helping them structure a
>        marketable transaction that best meets the company's
>        needs.
>        Follow-Through.  We stay involved with the client after
>        the transaction is completed, thereby facilitating
>        conversation regarding future transactions and
>        reinforcing our role as financial advisor.
(Pl.'s Third Am. Compl. Ex. A at S1218 and S1222 and Ex. B at S1490 and S1494.)

that is embodied in a writing.  Plaintiff does not point to any evidence that Defendants entered into a written agreement with Plaintiff to acts as a fiduciary.  Therefore, Plaintiff's claim for breach of fiduciary duty must fail.  Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's claim for breach of fiduciary duty.

**B.   Agency**

Plaintiff contends that the Defendant SunTrust Entities were express and implied actual agents for Plaintiff in regard to its banking and financial decisions.  (Pl.'s Third Am. Compl. ¶ 87)  Plaintiff further asserts that, as agents, Defendants owed Plaintiff a fiduciary duty.  However, Plaintiff has neither alleged that Defendants had the authority to make decisions on behalf of Plaintiff nor pointed to evidence in the record to support any such contention.  In addition, the Court has determined that Defendants did not owe Plaintiff a fiduciary duty.   Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's claim under a theory of agency.

**C.   Negligence**

To sustain an action for negligence, a plaintiff must demonstrate: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that

14

duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation.  Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000).  "The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court."  Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993).  In determining whether a duty is owed, courts consider "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant."  Id. at 869-70 (quoting Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 859 (Tenn. 1985)).  "A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant."  Id.

Plaintiff's claim for negligence is grounded in its contention that Defendants negligently recommended the 1999 and 2000 Swap Agreements and subsequently failed to monitor or supervise the 1999 and 2000 Swap Agreements.  Plaintiff asserts that Defendants Plaintiff also asserts that Defendants "expressly assumed a duty to act as [Plaintiff's] financial advisor and ... recommend only 'appropriate' derivatives."  (Pl.'s Third Am. Compl. ¶ 91.)  In support of its contentions, Plaintiff asserts that Defendants owed a duty of care to Plaintiff and provided negligent recommendations and advice with respect to the 1999 and 2000 Swap Agreements.  In particular, Plaintiff contends that through experts it has established that "appropriateness" is the

15

standard of care owed by Defendants to Plaintiff and that

Defendants breached that "duty."[7]   Plaintiff further contends

that it is entitled to summary judgment because Defendants have

not rebutted the "customer appropriateness standard" advanced by

Plaintiff.

The only recognized legal duty that Plaintiff alleges

Defendants owed them is a fiduciary duty.  Plaintiff has cited no

legal authority regarding any duty of "appropriateness" that

indicates that such a duty exists.  The Court has already

determined that Defendants were not a fiduciary to Plaintiff and

did not owe Plaintiff a fiduciary duty.  Accordingly, the Court

GRANTS Defendants' motion for summary judgment with respect to

Plaintiff's claim for negligence.

### D. Indemnification

In their motion, Defendants also moved offensively for

summary judgment regarding their counterclaims for

indemnification asserted in Defendants' Answer and Counterclaim,

filed January 10, 2005 (Docket No. 252).  However, Plaintiff had

previously moved to dismiss Defendants' counterclaims.  The Court

will address whether Defendants' counterclaims for

indemnification should be dismissed, and if not, whether

---

[7] Plaintiff contends that expert testimony is required to
determine the standard of care relevant to "market professionals"
and that through experts Plaintiff has established a prima facie
case that Defendants owed a duty to Plaintiff.  Plaintiff has
cited no legal authority in support of this position.

Defendants' are entitled to summary judgment regarding those counterclaims, in a separate order.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED regarding Plaintiff's claims against all Defendants.   Plaintiff's claims against all Defendants are therefore DISMISSED with prejudice.


So ORDERED this $10$ day of May, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

17

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 327 in case 2:03-CV-02217 was distributed by fax, mail, or direct printing on May 16, 2005 to the parties listed.

---

Sara Margaret Falkinham
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

S. Lawrence Polk
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309--399

Cannon F. Allen
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

John C. Speer
BASS BERRY & SIMS PLC
100 Peabody Place
Ste. 900
Memphis, TN 38103

Elena C. Parent
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309--399

Honorable Jon McCalla
US DISTRICT COURT